UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**DARYISE L. EARL,**
        **Plaintiff,**

     v.                                                    Case No. 10-C-0247

**RACINE COUNTY JAIL, ROBERT D. CARLSON,
JAMES SHERIFF, SGT. JENNINGS,
and JOHN DOES,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff Daryise L. Earl, who is incarcerated at Green Bay Correctional Institution, filed this pro se civil rights action under 42 U.S.C. § 1983. Before me now is the defendants' motion for summary judgment.

### I. FACTS

On February 9, 2007, a Racine County, Wisconsin, jury found Earl guilty of first-degree intentional homicide and armed robbery. Immediately after he was found guilty, two Racine sheriff's deputies who are not defendants in this case, Brian Burns and Saul Sutton, escorted him from the courtroom to a holding cell at the Racine County Jail. Once Earl was locked in the holding cell, Burns and Sutton left. A short time later, Earl was informed that he was going to be placed on suicide watch. According to defendants, Earl was being placed on suicide watch as a precautionary measure pursuant to the jail's policy of putting all inmates who had just been convicted of a serious crime on suicide watch until they could be evaluated by a mental-health professional. The jail's administrators adopted this policy because they believed that after a person is convicted of a serious crime, he or she is more likely to commit suicide. See Sosnay Decl. Ex. B at 7, ECF No. 41-2 (section of Racine

County Jail suicide-prevention policy indicating that time period after inmate is found guilty is a high-risk time for suicidal thinking). According to Earl, however, he was placed on suicide watch because Sergeant Eric Jennings, who is a defendant in this case, falsely stated that Earl had threatened to kill sheriff's deputies. The statement that Earl is referring to appears in Jennings's incident report for February 9, 2007. (Jennings prepared this report to document the incident described in the next paragraph.) In his report, Jennings states that he "was advised that Earl had threatened to kill deputies." Sosnay Decl. Ex. C, ECF No. 41-3.

All inmates on suicide watch at the Racine County Jail are required to wear suicide gowns. When Earl was told that he was being placed on suicide watch and that he had to change into the suicide gown, he stated that he was not suicidal and that he would not put on the gown. A short time later, Sergeant Jennings came to the holding cell and told Earl that if he refused to put on the gown, he would be forcibly extracted from his cell. At this point, Earl relented, put on the gown, and was transferred to the suicide unit.

A few days later, on February 12, 2007, Earl woke up and determined that he was having an allergic reaction to the gown. According to Earl, he had an itchy rash that covered his body. Earl notified "Officer Smith" (who is not a defendant) of his condition, and Smith immediately called the jail nurse. A short time later, the nurse (who is not a defendant) arrived and examined Earl. The nurse observed scratches on Earl's skin, but no rash or bumps. She gave Earl some Benadryl and hydrocortisone cream to address his complaints of irritation. Earl contends that the nurse did not examine him thoroughly enough, and that if she had she would have discovered that he had a rash.

2

Also on February 12, 2007, a mental-health worker, Kevin Watson (who is not a defendant), met with Earl to determine whether he could be removed from suicide watch. Watson told Earl that he did not think he was suicidal, but that he had to talk with a few people before he could recommend that he be removed from suicide watch. On February 14, 2007, Watson determined that Earl could be removed from suicide watch.

On February 15, 2007, upon his release from suicide watch, Earl was transferred to administrative segregation. The reason Earl was placed in administrative segregation rather than the general population is not entirely clear, but defendants seem to contend that Earl was placed in segregation because of his refusal to put on the suicide gown a few days earlier. On February 27, 2007, Earl was released from administrative segregation and allowed to return to the general population.

On April 18, 2007, Earl was transferred to state prison to serve his sentence. However, on March 24, 2009, Earl was returned to the Racine County Jail so that he could attend court proceedings. Earl's stay at the jail lasted until March 31, 2009. From March 24 to March 27, Earl was housed in "intake." See Wearing Decl. ¶¶ 6–7, ECF No. 53. From March 27 to March 31, he was housed in administrative segregation.

## II. DISCUSSION

### A. Deprivation of Liberty Without Due Process

Earl's first claim is that he was deprived of liberty without due process of law when he was placed on suicide watch and then in administrative segregation. Defendants contend that Earl's placement on suicide watch and in administrative segregation did not deprive him of a liberty interest in the first place, and that therefore I need not determine

3

whether Earl received due process. To the extent that Earl's claim involves his placement in administrative segregation, the defendants are undoubtedly correct: placement in administrative or discretionary segregation for a short period of time does not constitute a deprivation of liberty. Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009); Lekas v. Briley, 405 F.3d 602, 609 (7th Cir. 2005). Here, Earl was placed in administrative segregation between February 15 and February 27, 2007, and then again between March 24 and March 31, 2009.[1] These periods of confinement in administrative segregation were simply too short to implicate a liberty interest.

However, suicide watch appears to be a more restrictive form of confinement than administrative segregation. Inmates on suicide watch must wear a suicide gown, they are not allowed to have any items in their cell other than a mattress and suicide-proof blankets, and they are subject to other restrictions. See Sosnay Decl. Ex. B at 10–11, ECF No. 41-2 (describing conditions of suicide-watch confinement). The Seventh Circuit has explained that "a liberty interest may arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." Marion, 559 F.3d at 697–98 (emphasis in original). Here, the conditions of suicide-watch confinement appear to have been more restrictive than the conditions of administrative segregation, but it is not clear that those conditions were "unusually harsh." Moreover, Earl was on suicide watch for only seven days—an insubstantial length of time—and thus he probably was not deprived of a liberty interest. Cf. Nwaokocha v. Sadowski, 369 F. Supp. 2d 362, 373

---

[1] Between March 24 and March 27, 2009, Earl was actually placed in "intake" rather than administrative segregation. However, the record does not indicate whether the conditions in intake are any different than the conditions in administrative segregation, and so I will assume that intake is a form of segregated confinement.

4

(E.D.N.Y. 2005) (concluding that confinement on suicide watch for 30 days did not implicate a liberty interest); Jones v. Lee, No. 2:09–CV–11283, 2012 WL 683362, at *4 (E.D. Mich. 2012) (collecting cases in support of the proposition that "[t]emporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause").

In any event, even if Earl's placement on suicide watch implicated a liberty interest, Earl would not be entitled to relief. The defendants contend that Earl was placed on suicide watch pursuant to the jail's policy of placing all inmates who have just been convicted of a serious crime on suicide watch until they can be evaluated by a mental-health professional. Earl does not contend that this policy is unconstitutional. Instead, he contends that the defendants are lying when they say that he was placed on suicide watch pursuant to this policy. Earl thinks that his placement on suicide watch had something to do with Sergeant Jennings's allegedly false statement that Earl had threatened to kill deputies. Citing a New York district court case from 1984, he argues that depriving him of a liberty interest on the basis of false evidence is a violation of due process. See Morrison v. Lefevre, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984). Even if that case accurately states the law, however, Earl cannot prove that Jennings made a false statement or that he was put on suicide watch because of that false statement. First, Jennings's statement was that he had been "advised that Earl had threatened to kill deputies," see Sosnay Decl. Ex. C, ECF No. 41-3, and there is simply no evidence in the record indicating that this statement was false—i.e., that no one had told Jennings that Earl had threatened to kill deputies. Second, even if the statement was false, there is no evidence that it played any role in the decision to put Earl on suicide watch. Indeed, it would have made little sense to put Earl on suicide watch,

5

rather than in administrative or disciplinary segregation, because he had threatened to kill deputies. The only reasonable conclusion that can be drawn from the record, then, is that Earl was placed on suicide watch pursuant to the jail's policy of placing all inmates who had just been convicted of a serious offense on suicide watch until they can be examined by a mental-health professional—a policy that Earl does not challenge. Accordingly, the defendants' motion for summary judgment on Earl's due-process claim will be granted.

## B. Deliberate Indifference to Serious Medical Need

Earl's remaining claim is that "the defendants" acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, when they forced him to wear a suicide gown that he was allergic to. I put "the defendants" in scare quotes because it is not clear who Earl thinks is liable in connection with this claim. In any event, as explained below, Earl has produced no evidence suggesting that any of the named defendants were deliberately indifferent to his serious medical needs.

When Earl notified one of his guards that he was having an allergic reaction to the suicide gown, that guard immediately called the nurse. The nurse, who is not a defendant in this case, promptly examined Earl and gave him medication. Earl contends that someone was deliberately indifferent because he was forced to wear the suicide gown even after the nurse determined that he was allergic to it. However, as far as the record reveals, the nurse did not determine that Earl was allergic to the gown or recommend that he be removed from it; she thought that the proper response to Earl's discomfort was to provide him with medication. The other defendants, all of whom lacked medical expertise, cannot be blamed for deferring to the nurse. See Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008) (stating that "in determining the best way to handle an inmate's medical needs, prison

6

officials who are not medical professionals are entitled to rely on the opinions of medical professionals"). Accordingly, the defendants are entitled to summary judgment on this claim.

I note that Earl contends that the nurse's examination was not thorough enough and that she did not check below his waist for a rash. However, the nurse is not a defendant, and her alleged failure to conduct a thorough examination cannot be imputed to any of the defendants. See, e.g., Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (stating that § 1983 creates a cause of action based on personal liability and predicated upon fault, and that therefore liability does not attach unless the individual defendant caused or participated in a constitutional deprivation).

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**.  The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 3rd day of July 2012.

        s/ Lynn Adelman
        LYNN ADELMAN
        District Judge

7

Case 2:10-cv-00247-LA    Filed 07/03/12    Page 7 of 7    Document 59